NATALIE KEUSSEYAN
CA Bar No. 307844
COZEN O'CONNOR
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Telephone: 213.892.7900
Facsimile: 213.892.7999
Email: nkeusseyan@cozen.com

Attorney for Plaintiff in Intervention,
ZURICH AMERICAN INSURANCE COMPANY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUCOMMUN AEROSTRUCTURES, INC. and DUCOMMON AEROSTRUCTURES MEXICO, LLC,<br><br>　　　Defendants. | Case No.: 2:23-CV-9403<br><br>PLAINTIFF ZURICH AMERICAN INSURANCE COMPANY'S COMPLAINT IN INTERVENTION |
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>　　　Plaintiff in Intervention,<br><br>　　vs.<br><br>DUCOMMUN INCORPORATED; DUCOMMUN AEROSTRUCTURES, INC. and DUCOMMON AEROSTRUCTURES MEXICO, LLC,<br><br>　　　Defendants. | |

////

////

////

**NATURE OF THIS ACTION**

1. On or about June 29, 2020, Defendants negligently ignited a fire at their facility in Guaymas, Mexico. Defendants knew about, but failed to repair, multiple

1

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

faults in an electrical water heater and water tank used to test manufactured components for leaks. Eventually, these faults culminated in a fire when the tank drained of water and water heater ignited the plastic tank itself. The fire spread from there, throughout Defendants' facility, and finally into Williams' adjoining manufacturing facility, causing catastrophic damages.

## THE PARTIES

2.      Plaintiff Williams International Co., LLC ("Williams") is a Michigan limited liability corporation with its principal place of business in Pontiac, Michigan. Williams is a limited liability company whose members are citizens of the State of Michigan.

3.      Intervenor Zurich American Insurance Company ("Zurich") is an insurance company registered in Schaumburg, Illinois with its principal place of business in New York, New York.

4.      Defendant Ducommun Incorporated ("Ducommun Inc.") is a Delaware corporation with its principal place of business located at 200 Sandpointe Avenue, Suite 700, Santa Ana, California. Ducommun Inc. is a citizen of the State of California and the State of Delaware.

5.      Defendant Ducommun Aerostructures, Inc. ("Ducommun Aerostructures") is a Delaware Corporation with its principal place of business located at 268 E. Gardena Blvd., Gardena, California. Ducommun Aerostructures is a citizen of the State of California and the State of Delaware.

6.      Defendant Ducommun AeroStructures Mexico, LLC ("DAM") is a Delaware Limited Liability Company with its principal place of business located at 268 E. Gardena Blvd., Gardena, California. According to Defendants' public filings ////

with the Securities Exchange Commission, the sole member of DAM is Ducommun Aerostructures. DAM is a citizen of the State of California and the State of Delaware.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

COMPLAINT IN INTERVENTION

**JURISDICTION AND VENUE**

7.      Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.

8.      This Court has personal jurisdiction over Defendants Ducommun Inc. and Ducommun Aerostructures because they have their principal places of business in this State.

9.      This Court has personal jurisdiction over DAM because its principal place of business is in this District. As a limited liability company, DAM resides in the district of its members. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("an LLC is a citizen of every state of which its owners/members are citizens"). DAM's sole member is Ducommun Aerostructures, which is headquartered in this District.

10.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1), as the principal places of business for all Defendants are in this District.

11.      The Parties executed a Tolling Agreement on November 16, 2021 that was amended on May 16, 2022, and executed a Second Tolling Agreement on May 12, 2023. Williams terminated the Second Tolling Agreement effective October 7, 2023 by mailing notice pursuant to Sections 8 and 9 of the Second Tolling Agreement. As a result, all statutes of limitations on the causes of action asserted herein were tolled from November 16, 2021 through November 5, 2023.

**FACTUAL BACKGROUND**

**A.      The Nature of Williams' Business**

12.      Williams is a privately-held, family-owned business headquartered in Pontiac, Michigan that designs and manufactures specialized aeronautical gas turbine engines used in an array of commercial and military applications. Williams has private and public clients in the United States and abroad.

////

COMPLAINT IN INTERVENTION

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

**B.      The Nature of Ducommun's Business**

13.    Ducommun Inc. is a publicly-traded corporation that offers "manufacturing solutions to customers in the aerospace, defense, and industrial markets. Founded in 1849, the Company specializes in two core areas – Electronic Systems and Structural Systems – to produce complex products and components for commercial aircraft platforms, mission-critical military and space programs, and sophisticated industrial applications."

**C.      The Roca Fuerte Park in Guaymas, Mexico**

14.    During the relevant time period, both Williams and Defendants operated manufacturing facilities at the Roca Fuerte Manufacturing Community in Guaymas, Mexico ("Roca Fuerte" or the "Park").

15.    Williams started manufacturing operations at Roca Fuerte (the "Williams Facility") around 2007. The Williams Facility adjoined the separate manufacturing facility operated by Ducommun (the "Ducommun Facility").

16.    Ducommun produced aircraft structural components and subassemblies for commercial aircraft in the Ducommun Facility.

17.    At Roca Fuerte, Williams processed, manufactured, and assembled bespoke engine components and other parts. Williams also designed, built, and employed custom-made machines and equipment to conduct such operations. Williams shipped those parts that it manufactured at Roca Fuerte to other Williams facilities in the United States, where Williams incorporated the parts into finished goods, generally turbine engines. Williams then sold those finished goods to its customers in the United States and worldwide.

18.    Williams' operations at Roca Fuerte were critical to its overall manufacturing process and business operations in the United States. Among other

////

things, Williams relied on the components and parts it built at Roca Fuerte to construct its finished goods in the United States.

COMPLAINT IN INTERVENTION

19.    At Roca Fuerte, the Williams Facility and Ducommun Facility occupied a single building separated by a dividing interior wall.

**D.    The June 29, 2020 Fire**

20.    In the early morning hours of Monday, June 29, 2020, a fire started at the Ducommun Facility; it eventually engulfed the entire building in flames, including the Williams Facility. The fire started in a leak-test tank machine in the Ducommun Facility under the sole control of Ducommun. A smoke detector in the Ducommun Facility activated around 1:01 a.m. on June 29, 2020.

21.    The fire spread unabated and eventually breached the common interior wall shared by the Williams Facility and the Ducommun Facility. The fire eventually moved into the Williams Facility, and soon thereafter, the entire building (both the Ducommun Facility and the Williams Facility) was engulfed in flames.

**E.    Multiple Failures and Known Problems with Water Heater and a Leak-Test Tank Start the Fire**

22.    Defendants' failures, on multiple fronts, caused the fire.

23.    First, Defendants egregiously failed to maintain and operate safely and properly their equipment in the Ducommun Facility.

24.    The fire originated in Defendants' leak-test tank, which Defendants used to determine if a part, or assembly, is sufficiently air-tight by submerging such component in the water-filled tank.

25.    A component could be deemed air-tight if, when submerged, air bubbles, which would indicate a leak, did not arise. In order to ensure an adequate air-tightness reading, the water in the tank had to be heated.

26.    In order to heat the water in the tank, Defendants utilized an electric water heater containing multiple electric heating rods, which could only remain grounded when fully submerged in water. That is (following the basic premises of physics), the water heater that was used to conduct the air-tightness test needed to remain covered by water at all times or else an electric arc would occur.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

5

27.   If an electric arc occurred, the heater, being exposed to air, could electrocute persons and/or ignite surrounding materials.

28.   The dangerous combination of electricity, water and air was intended to be monitored by the automatic safety and shut-off features built into each heater and tank, that were designed to prevent all of the water from completely draining and/or evaporating from the tank, and would prevent the heater from continuing to heat without sufficient water in the tank.

29.   Two of the safety features built were (1) an automatic filling mechanism and (2) a safety timer.

30.   The automatic filling mechanism was designed to refill the tank with water, as needed, to offset any lowering in the required water level that might occur, whether due to evaporation, leakage, or any other reason. The filling mechanism was comprised of a float that triggered additional water to flow into the tank when the float fell below a certain level.

31.   The safety timer was designed to automatically turn off the heater at preset times, thus preventing evaporation of water during non-working hours or while leak tests were otherwise not being conducted. Again, preventing exposure of the live heater to air was the basic tenet for any operator of this system. Grievous consequences could, and did, follow from Defendants failing to observe this basic principle.

32.   Indeed, Ducommun intentionally and knowingly circumvented these logical safety features and/or negligently failed to maintain the water heater, so that the safety features did not function. In part, Ducommun knew these safety mechanisms were not functioning, and/or intentionally disabled them or permitted them to remain disabled. When Ducommun acquired the water heater and constructed ////

the tank, it was responsible for maintaining the heater and tank and to ensure that each functioned properly. Ducommun failed to do that.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

COMPLAINT IN INTERVENTION

33. Ducommun knew that the automatic refilling mechanism was broken, and the only way to refill the leak-test tank was to manually add water. Thus, as water evaporated from the tank as a natural consequence of heating the water, it was only replaced when Ducommun workers were present to manually refill the tank.

34. Ducommun also knew that the safety timer on the submerged water heater was not functioning. Therefore, after the submerged heater was turned on, it remained activated unless and until Ducommun workers manually turned it off.

35. Ducommun knew of these faults and did not maintain or fix either of these safety features.

36. Exacerbating matters, Ducommun also failed to maintain the tank itself, which was leaking. Ducommun knew the tank comprised combustible material, knew that it was leaking, which accelerated the loss of water and failed to implement any remedial actions.

37. In fact, Ducommun had instituted manual "work-arounds" for these problems so it could continue using the leak-test tank, despite its faulty condition. Unfortunately, Ducommun's "work-arounds" required, among other things, workers to be continually present, so they could manually mitigate the known fire risk.

38. Ducommun was well aware of this risk, making its actions even more egregious. Two years before the June 2020 fire, the exact scenario had occurred. The first time, Ducommun was lucky to avoid disaster. The second time, however, the fire caused by Ducommun's acts breached the common wall and burned down Williams' Facility.

39. The June 2020 fire started when Ducommun left on the submerged water heater over the weekend without anyone present to refill the tank when the water level predictably dropped. Post-fire investigations conducted by Defendants, Williams, the

////

landlord's insurer, and the Mexican government all concluded the fire originated in the leak-test tank.

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

COMPLAINT IN INTERVENTION

40.     For example, investigators found the submerged water heater in the remains of the leak-test tank, with its switch in the "on" position, thus confirming that the heater was left in the tank and was left "on" over the weekend. Investigators also confirmed that "the heater was energized when the fire occurred" because of evidence of "arcing damage in the heater's central tubular structure that surrounds the electrical heating elements . . ."

41.     Next, Defendants also failed to ensure that their personnel were adequately trained to safely and properly operate the equipment. For example, Defendants did not make available to its employees an operating manual for the leak-test tank.

42.     Defendants also negligently failed to maintain adequate fire safety measures at the Ducommun Facility, as further outlined in Section F, below. For example, when the electrified submerged heater was no longer completely submerged in water, as required, it overheated the plastic tank, until it began smoking and eventually caught fire. The ignited plastic tank caused fire to spread to combustible materials, which had been improperly stored and left nearby. From there, the fire continued spreading.

43.     To summarize, Defendants breached their duties to:

i)     ensure that equipment it was using was properly maintained and complied with operating requirements and industry standard safety requirements;

ii)     have proper procedures and training of their personnel to ensure that personnel understood operating requirements, and to ensure that equipment, particularly safety devices on equipment, were properly maintained and repaired, and not tampered with or disabled; and

////

////

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

COMPLAINT IN INTERVENTION

iii)    adequately protect from and mitigate an event of fire in its Facility, in particular, to turn off electrified equipment, properly store combustibles, in the event of fire, prevent it from spreading, and otherwise prevent this fire.

F.    Ducommun Failed to Take Sufficient Care to Ensure a Fire Would Not Start or Spread

44.    Had Ducommun not breached its duties, the fire could have been stopped, even in the absence of any Ducommun workers onsite. However, Ducommun's lack of safety and fire protection systems and precautions allowed the fire to spread unabated into the Williams Facility, causing the damages and losses suffered by Williams.

45.    Defendants were directly responsible for the operations within the Ducommun Facility and, despite having the ability and opportunity to do so, decided not to furnish it with fire suppression systems, which could have prevented the fire from spreading to the Williams Facility.

46.    The landlord for the Ducommun Facility repeatedly informed Ducommun in writing that its facility presented a high risk of fire. The landlord advised Ducommun that it was necessary to install fixed fire-fighting systems because of the high risk of fire.

47.    Had Ducommun installed an appropriate fire suppression system as recommended, the fire would have been stopped at the fire's point of origin before spreading to the Williams Facility.

**G.    Williams' Damages**

48.    Although the amount of Williams damages have yet to be established in this lawsuit, the damages are expected to exceed the $5,000,000.00 payment made by Zurich to its insured in this matter.

H.    Zurich's Damages

49.    Zurich, along with General Security Indemnity Co. of Arizona ("GSINDA"), XL Insurance America, Inc. ("XL Insurance"), and Aviva Insurance

COMPLAINT IN INTERVENTION

Limited ("Aviva"), issued an insurance contract [Policy No. PPR7658139-00 ("Policy")], the terms and conditions of which are incorporated herein by reference as if set forth here in full. Zurich subscribed to a 50% quota share under the Policy. In accordance with the terms and conditions of that Policy, Intervenor has paid its 50% quota share of covered damages under the Policy ($5,000,000.00) to Plaintiff.

50.     As a result of such payment, Intervenor is contractually subrogated to the claims of its Insured against any responsible third party, including the named Defendants and Third Party Defendants in this action, to the extent of its $5,000,000.00 payment.

## COUNT I

### (NEGLIGENCE)

51.     Plaintiff incorporates by reference all preceding allegations as if restated herein.

52.     At all times herein mentioned Defendants had a duty to exercise reasonable care in their oversight of operations at the Ducommun Facility in order to prevent damages and losses to other businesses conducting operations at the Park. This particularly included Williams, with whom Ducommun shared a building.

53.     Defendants knowingly breached their duty to Williams by failing to exercise reasonable care in the following respects, among others:

i)      In their failure to install fire suppression systems in the Ducommun Facility;

ii)     In their failure to properly train and supervise their personnel;

iii)    In their failure to ensure that its equipment in the Ducommun Facility was operating safely and in a manner consistent with how the equipment was intended to be operated;

iv)     In their failure to repair the leak in the leak-test tank that allowed water to leave the tank at an accelerated and dangerously low rate, making it possible for the leak-test tank to ignite;

COZEN O'CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

10

v)      In their failure to repair the automatic water re-filling mechanism, which would have prevented water from reaching dangerously low levels when the heater was left on, and which also made it possible for the tank to ignite;

vi)      In their act of failing to repair and maintain and/or disabling the safety timer, which would have deactivated the submerged water heater and igniting the plastic tank;

vii)      In their failure to leave the submerged heater in the leak-test tank unsupervised, knowing that the water would reach dangerously low levels; and

viii)      In their failure to monitor the leak-test tank and leaving it activated, but unsupervised, from Friday afternoon through late Sunday night/early Monday morning, when the fire started.

54.      There was a known, high risk that the water test tank would ignite in this manner, because such an occurrence was foreseeable, especially because it had happened on at least one prior occasion. Defendants knew from this prior incident and simple common sense that the faults in the leak-test tank and the submerged water heater created an unusually high danger of fire.

55.      Defendants also stored combustible materials in its Facility; knew that the Williams Facility and the Ducommun Facility were separated by only a single common wall; and that Ducommun had not installed a sprinkler system to stop a fire at its inception.

56.      Defendants knew, or should have known, that Williams would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care.

57.      As a direct and proximate cause of Defendants' negligence, Williams suffered significant actual and consequential damages in excess of $75,000, exclusive of interest and costs.

////

////

////

11

COMPLAINT IN INTERVENTION

## COUNT II

### (NEGLIGENT HIRING/SUPERVISION)

58.   Plaintiff incorporates by reference all preceding allegations as if restated herein.

59.   Defendants, by and through their employees, supervised, directed, and retained control over the workers at the Ducommun Facility in Roca Fuerte. Under its contract with the landlord, Ducommun retained "direct supervisory control and management responsibility for all workers who are allocated to [Ducommun's] operations at the Mexican Facility."

60.   The workers in the Ducommun Facility acted at Defendants' supervision, direction, and control.

61.   Defendants owed a duty to Williams, which they breached by failing to exercise reasonable care in the following respects, among others:

   i)   In their failure to properly train and supervise their personnel;

   ii)   Failing to supervise their workers to ensure that they installed fire suppression systems in the Ducommun Facility;

   iii)   Failing to train their workers to ensure that they operated the machinery safely and in a manner consistent with how the machinery was intended to be operated;

   iv)   Failing to supervise their workers to ensure that they operated the tank properly, including repairing the leak in the leak-test tank that allowed water to leave the tank at a dangerously low rate;

   v)   Failing to supervise their workers to ensure that they repaired and maintained the water heater to prevent it from continuously evaporating water, depriving the tank of water and making it possible for the tank to ignite;

   vi)   Failing to supervise their workers to ensure that they repaired and maintained the safety timer, which would have deactivated the submerged water

////

COMPLAINT IN INTERVENTION

heater, stopped it from continuously evaporating water or heating, and igniting the plastic tank;

vii)    Failing to supervise their workers to ensure they appropriately turned off the submerged heater in the leak-test tank before leaving for the weekend; and

viii)    Alternatively, failing to supervise their workers to ensure that they appropriately monitored the leak-test tank from Friday afternoon through late Sunday night/early Monday morning, when the fire started.

62.    At all times herein mentioned Defendants had a duty to exercise reasonable care in their oversight of their workers at the Ducommun Facility in order to prevent damages and losses to other businesses conducting operations at the Park, particularly Williams, which shared a common wall with Ducommun.

63.    There was a known and foreseeable high risk that the water test tank would ignite under the above circumstances. Defendants knew from a prior incident that the faults in the leak-test tank and the submerged water heater created an unusually high danger of fire. Defendants also knew that combustible materials were stored in the Ducommun Facility, that the Williams Facility and the Ducommun Facility were separated by a common wall and that there were no sprinkler systems installed in the Ducommun Facility to stop a fire at its inception. Despite that known, unusually high risk of danger, Ducommun and its workers never instituted proper precautions to prevent a recurrence.

64.    Defendants therefore knew and recognized, or should have known and recognized, that the work which the Ducommun workers were performing created a peculiarly unreasonable risk of physical harm to others, and in particular to Williams, unless precautions were taken, including repairing the mechanisms at issue and keeping all safety mechanisms in working order. Ducommun failed to exercise reasonable care in supervising the workers to take necessary precautions.

////

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

COMPLAINT IN INTERVENTION

65.   As a direct and proximate cause of Defendants' negligence, Williams suffered significant actual and consequential damages in excess of $75,000, exclusive of interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, in consideration of the foregoing, Williams respectfully requests the entry of a judgment in its favor and against Defendants on its Claims in this Complaint, and prays for relief as follows:

1.   A judgment for actual damages in an amount to be determined at the time of trial; and

2.   A judgment for special damages in an amount to be determined at the time of trial.

## **JURY DEMAND**

Zurich hereby demands a trial by jury under the United States Constitution and Federal Rule of Civil Procedure 38(a).

Dated:   April 16, 2024

COZEN O'CONNOR

By: _____
NATALIE KEUSSEYAN

Attorneys for Plaintiff in Intervention
ZURICH AMERICAN INSURANCE
COMPANY

LEGAL\69531148\1

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

COMPLAINT IN INTERVENTION